UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE ONE, JOHN DOE TWO, and JOHN DOE THREE, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>AETNA, INC., AETNA HEALTHCARE, INC., AETNA SPECIALTY PHARMACY, LLC,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 14cv2986-LAB (DHB)<br><br>**ORDER ON MOTION TO DISMISS (DOCKET NO. 21) AND MOTION FOR DETERMINATION THAT PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES, EXPENSES, AND PAYMENTS TO CLASS REPRESENTATIVES (DOCKET NO. 24)** |

　　　This case arises out of Aetna's announcement that it would change certain health insurance policies to require its insureds to obtain HIV and AIDS medications through the mail. (Docket no. 17 at ¶ 1.)

　　　John Doe One sued Aetna on December 19, 2014, contending that the proposed change would threaten HIV and AIDS patients' health and privacy, and that it would cost them thousands of dollars each month if they chose to get their medications at their community pharmacy instead of through the mail. (Docket no. 1 at ¶ 1.) He alleged that Aetna notified certain plan members of this change through a November 3, 2014 letter, which announced that it was recategorizing certain HIV and AIDS medications effective

January 1, 2015.  (*Id.* at ¶ 6, Exhibit 1.)  A First Amended Complaint (FAC) was filed on May 8, 2015.  (Docket no. 17.)  It added John Doe Two and Three; alleges that all three plaintiffs requested to opt out of the mail order program, but Aetna initially denied their requests; and alleges that John Doe Three—the only plaintiff with an "individual" plan, i.e., a health plan purchased directly by an individual—has been forced to purchase his medication by mail order since March 2015.  (*Id.* at ¶¶ 36–38.)  Plaintiffs seek injunctive relief and damages. (*Id.* at 74–75.)

     Plaintiffs acknowledge that in March 2015, Aetna's counsel informed their counsel that it had suspended the program for "employer" plans—i.e., health plans sponsored by employers for their employees—until January 2016, and for individual plans until July 2015. (Docket no. 24-2 at ¶ 4.)[1]  Aetna contends, and Plaintiffs don't deny, that for customers like John Doe One and Two who have employer plans, it never implemented the program, (Docket no. 17 at ¶¶ 36–37; Docket no. 21-2 at ¶¶ 2, 7, 14), and for customers like John Doe Three who have individual plans, it reversed the program effective June 1, 2015, (Docket no. 21-2 at ¶ 13.)  Aetna contends that it sent letters about the reversal to individual plan members on May 26, 2015, and to employer plan members in June 2015.  (*Id.* at ¶¶ 12, 13.) Plaintiffs acknowledge that on May 14, 2015 Aetna's counsel confirmed that it had terminated the program.  (Docket no. 24-2 at ¶ 7.)  Aetna declares that it has no current plans to reinstate the program (Docket no. 21-1 at 11; Docket no. 21-2, at ¶¶ 7, 10), but Plaintiffs complain that Aetna won't confirm whether its decision to terminate the program is permanent, (Docket no. 24-1 at 2 n.1.)  Contrary to Plaintiffs' allegations, Aetna contends that it would have permitted plan members to opt out of the mail order program.  (Docket no. 21-1 at 3; Docket no. 21-2 at ¶ 7.)

/ / /

---

[1] Aetna has filed a declaration that suggests, albeit ambiguously, a somewhat different version of what its counsel told Plaintiffs' counsel in March 2015. (Docket no. 21-5 at ¶¶ 3–5.) Aetna's declaration suggests that Plaintiffs' counsel knew as of March 2015 that the program change wouldn't go into effect at all as to John Doe One, and that after Plaintiffs filed the FAC, their counsel was informed that the program change wouldn't go into effect as to John Doe Two, and it would be reversed as to John Doe Three effective June 1, 2015. *Id.*  Any inconsistency doesn't effect the outcome of this order.

Aetna seeks dismissal, contending that: all three plaintiffs lack standing to assert claims for prospective relief; John Doe One and Two lack standing to assert claims for damages; and John Doe One and Two's claims aren't ripe. (Docket no. 21.) Plaintiffs contend they were the catalyst for Aetna's reversal, and they seek attorney's fees, reimbursement of expenses, and payment to class representatives. (Docket no. 24.)

**I.     Standing**

**A.     Legal Standard Governing 12(b)(1) Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a complaint if the court lacks subject matter jurisdiction over the claims at issue. A court lacks subject matter jurisdiction if a plaintiff lacks Article III standing. *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012). Plaintiffs bear the burden of establishing standing for each form of relief sought. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Standing requires that "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). With a facial attack, courts inquire whether the allegations contained in a complaint are sufficient on their face to invoke federal jurisdiction. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). With a factual attack, however, "the defendant may introduce testimony, affidavits, or other evidence to dispute the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* (internal brackets and quotation marks omitted). Aetna contends that dismissal is proper under either standard. (Docket no. 21-1 at 9 n.2.)

Standing is determined as of the time the complaint was filed. *Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014). The parties dispute whether the relevant complaint is the first complaint, initiating the action, or the FAC, which added John Doe Two and Three.

Citing *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), where the Court relied on the final complaint in making its standing determination, Aetna urges the latter. But, as noted by the Sixth Circuit, "[a] careful reading of [*McLaughlin*] demonstrates that the [final] complaint was important not because it was the operative pleading, but because it was that complaint which named 'three additional plaintiffs' who were 'still in custody' at the time the complaint was filed, and who were the plaintiffs found to have standing by the Court." *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004). Thus, "[t]he lesson of *McLaughlin* seems to be that standing is determined at the time the relevant claim is raised or party is joined." *Saleh v. Fed. Bureau of Prisons*, 2009 WL 3158120, at *5 (D. Colo. Sept. 29, 2009). The Court will evaluate John Doe One's standing as of the time of the original complaint, and will evaluate John Doe Two and Three's standing as of the time of the FAC.

### B. Whether Plaintiffs Suffered an Injury in Fact

#### 1. Prospective Relief

Aetna's challenge to Plaintiffs' standing to seek prospective relief focuses on lack of imminence. The imminence inquiry is meant to "ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal quotation marks omitted). "[A]llegations of *possible* future injury are not sufficient." *Id*. (internal quotation marks omitted).

Relying on its subsequent reversal of the mail order program, Aetna argues that "all three Plaintiffs lack standing to pursue prospective relief because there is no credible threat of any future harm." (Docket no. 21-1 at 10–11.) At the time that Plaintiffs filed their respective complaints, however, they had ample reason to believe that Aetna's proposed program would be put into effect. Indeed, Aetna told them that it would; Plaintiffs merely took Aetna's word for it. This is particularly clear for John Doe One—who brought the first complaint less than two months after he received notice of the program, less than a month before it was to go into effect, and after allegedly being told he couldn't opt out. John Doe Two and Three pose a closer question because Aetna had informed their counsel that it was

1  suspending the program before they filed the FAC.  But at the time, the suspension was
2  temporary,[2] and Plaintiffs had no reason to doubt that the program would be implemented
3  on January 2016 and July 2015 respectively as Aetna had allegedly announced.  *See White*
4  *v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (finding plaintiffs had standing to seek injunctive
5  relief despite a temporary policy change that obviated the plaintiffs' alleged harm because
6  the policy "had been in effect for only a month and was scheduled to expire in less than a
7  year" and "[t]he recent implementation of such a temporary policy was insufficient to
8  eliminate the plaintiffs' standing to seek prospective relief.").  While Aetna's reversal of the
9  mail order program may present a mootness issue, that issue isn't presented in Aetna's brief
10 and isn't before the Court.

11 Aetna's motion to dismiss the prospective relief claims for lack of standing is **DENIED**.

**2. Damages**

13 Since it never implemented the mail order program for customers like John Doe One
14 and Two that have employer plans, Aetna contends that John Doe One and Two lack
15 standing to seek damages.  Plaintiffs don't challenge this argument, and the Court agrees
16 with it.  *See Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184–85 (9th Cir. 2012)
17 (dismissing damages claim for lack of standing where the plaintiff couldn't show that the
18 challenged program had affected him personally).

19 Aetna's motion to dismiss John Doe One and Two's damages claims for lack of
20 standing is **GRANTED**.

**II. Prudential Ripeness**

22 Prudential ripeness is a question of justiciability that prevents the courts, through the
23 avoidance of premature adjudication, from entangling themselves in abstract disagreements.
24 *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  It
25 requires courts to "evaluate both the fitness of the issues for judicial decision and the

---

[2] Aetna's declaration suggests that the change it discussed with Plaintiffs' counsel wasn't temporary, but the conversation only applied to John Doe One.  Thus, even under Aetna's version of the conversation, John Doe Two and Three had no reason to doubt that the program would be implemented with respect to their plans.

hardship to the parties of withholding court consideration." *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015). The fitness prong asks whether "judicial resolution of the question presented . . . should await a concrete dispute." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003). Under this prong, a case is generally ripe if the remaining questions are purely legal; a case is not ripe if further factual development is required. *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007). The hardship prong asks whether "withholding review would result in direct and immediate hardship and would entail more than possible financial loss," *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). The burden of establishing ripeness rests with the party asserting the claim. *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). "Ripeness is determined at the time of the filing of the complaint." *Forest Glade Homeowners Ass'n v. Allied Mut. Ins. Co.*, 2009 WL 927750, at *2 (W.D. Wash. Mar. 31, 2009).

Both of the ripeness prongs are satisfied. With respect to fitness, no further factual development is necessary. The program wasn't an abstract idea when the relevant complaints were filed. *Cf. Addington v. US Airline Pilots Ass'n*, 791 F.3d 967, 980 (9th Cir. 2015) (fitness prong met for challenging union's memorandum of understanding with airlines because "the fruit of negotiations [was] manifest and some kind of final product ha[d] been reached." (internal quotation marks omitted)). At the time the original complaint was filed, the program was to go into place within the next month. And at the time the FAC was filed, it had already been applied to individual plan members, including John Doe Three. Thus, it's sufficiently concrete to evaluate against the causes of action in the FAC. Likewise, judged from the time that Plaintiffs filed the relevant complaints, their alleged health and privacy concerns with purchasing their medication through the mail supplied sufficient hardship to meet the second ripeness prong. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (hardship prong met where, absent a victory in the litigation, the plaintiffs would be required to dispense birth control over their religious and moral objections).

Aetna's motion to dismiss John Doe One and Two's claims for lack of ripeness is **DENIED**.

### III. Catalyst Theory

Plaintiffs seek attorney's fees, expenses, and payments to class representatives under the "catalyst theory." (Docket no. 24.) They contend that they "have achieved their primary objective in this class action lawsuit" and that their "efforts were the catalyst that brought Aetna to the bar of justice." (*Id.* at 1, 2.)

Where the catalyst theory applies, plaintiffs can obtain attorney's fees if their lawsuit brought about a voluntary change in the defendant's conduct. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 601 (2001). "[A] party asserting the catalyst theory must meet three thresholds to obtain fees: (1) that defendant's actions provided a plaintiff with 'some of the benefit sought' in the lawsuit; (2) that plaintiff's claims were not frivolous; and (3) that plaintiff's lawsuit was a substantial or significant cause of defendant's actions providing relief." *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 898 F. Supp. 2d 883, 899 (D. Md. 2012); *see also Buckhannon*, 532 U.S. at 627–28 (Ginsburg, J., dissenting) (describing the three conditions a plaintiff must show under the catalyst theory).

After *Buckhannon*, there's some question as to whether the catalyst theory remains available. Assuming it does, however, the Court is dubious whether it applies here. While Plaintiffs acknowledge the three catalyst theory elements, they provide in depth briefing of the third element only, and do little to establish the first two elements. Indeed, their complaint that Aetna won't promise to never implement a similar mail order program in the future cuts against a finding that they've achieved the benefit that they've sought. And at this stage, Plaintiffs have given the Court no reason to believe that their claims have any legal merit. Plaintiffs point to Aetna's decision to reverse the program, but that doesn't necessarily mean that their claims are colorable. For example, even if the Court were to assume that Aetna made the change in response to this lawsuit, the response may be a business decision made to avoid nuisance-value lawsuits. Other than the possible personal

preference of *some* of the class members, the Court doesn't understand what interest it serves to receive medications at a pharmacy as opposed to through the mail in a presumably nondescript package. Since most of Plaintiffs' claims survive Aetna's motion to dismiss, they will have an opportunity to establish that they've stated a genuine claim at a later stage.

The Plaintiffs' catalyst theory motion is **DENIED**.

## IV. Conclusion

Aetna's motion to dismiss (Docket no. 21) is **DENIED IN PART AND GRANTED IN PART** and Plaintiffs' catalyst theory motion (Docket no. 24) is **DENIED**.

**IT IS SO ORDERED**.

DATED: March 15, 2016

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge